# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ERIC TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV208 |
| | ) | |
| SERGEANT JEFFREY LAFAVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on the Motion for Summary Judgment filed by Defendants Sergeant Jeffrey LaFave ("Defendant LaFave"), Officer Anthony Monahan ("Defendant Monahan"), and Officer Brandon Earl ("Defendant Earl") (collectively, "Defendants") (Docket Entry 26). Because the record establishes Defendants' entitlement to judgment as a matter of law, the Court will grant the instant Motion.[1]

## <u>BACKGROUND</u>

On January 27, 2023, Plaintiff commenced this action by filing a complaint against Defendants in state court. (See Docket Entry 2 (the "Complaint").) According to the Complaint:

> On or about January 28, 2020, at approximately 7:15 pm Defendants LaFave and Monahan were conducting traffic control after an accident occurred at the intersection of Linden Road and Highway 5. . . . [Plaintiff] slowly approached the intersection while in a single lane of

---

1  Pursuant to the parties' consent, United States District Judge Loretta C. Biggs referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 15 at 1.)

traffic, driving at a cautious and appropriate speed.
While approaching Defendants LaFave and Monahan,
Plaintiff was given separate directives and instructions
from each of the Defendants. . . . [O]nce [Plaintiff]
traveled beyond the scene and debris, he could hear
[Defendant] LaFave yelling and directing him to stop.  As
instructed, [Plaintiff] promptly came to a safe stop.

(Docket Entry 2 at 2-3.)

The Complaint further alleges that Defendant LaFave approached

the driver's side of the vehicle and asked Plaintiff, "[w]here's

the weed?"  (Id. at 3.)  In response (per the Complaint):

Plaintiff immediately provided a container with small
bits of an unknown substance inside of it. . . .
[Defendant] Monahan while holding his service weapon and
pointing it downward, ordered [Plaintiff] to exit his
vehicle.  [Plaintiff] respectfully complied. . . .
Defendant Earl . . . arrived on scene and placed
handcuffs on [Plaintiff] . . . .  Subsequently,
[Plaintiff] was . . . charged with Felony Possession with
the Intent to Sell and/or Deliver Marijuana and three
misdemeanors.

(Id.)  Lastly, the Complaint states: "On July 8, 2020, a [p]robable

[c]ause and [s]uppression hearing was held [in state court]" (id.),

"[Plaintiff]'s criminal charges were dismissed on August 26, 2021"

(id. at 4), "and all charges against [Plaintiff] were expunged on

November 28, 2021" (id.).

In reliance on the Complaint's allegations, Plaintiff pleads

five claims for relief.  First, he asserts that Defendant LaFave

unlawfully conducted a traffic stop violating Plaintiff's Fourth

Amendment rights.  (See id.)  Next, Plaintiff asserts claims

against Defendants under state law for false imprisonment, assault

and battery, intentional infliction of emotional distress ("IIED"),

2

and malicious prosecution. (See id. at 5-7.) As relief, Plaintiff seeks, inter alia, "compensatory damages in an amount in excess of twenty-five thousand dollars" (id. at 7) and "punitive damages in an amount to be determined by a jury" (id. at 8).

Defendants have filed a "mo[tion] for summary judgment on all claims asserted in the Complaint on the grounds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law." (Docket Entry 26 at 1.) In particular, Defendants' supporting memorandum asserts that, (i) "summary judgment is appropriate on all of Plaintiff's claims without reaching the merits because each claim is barred by the doctrine of collateral estoppel" (Docket Entry 27 at 11 (emphasis omitted and standardized capitalization used); see also id. at 11-15 (developing that argument)), (ii) "summary judgment is appropriate on the merits because no reasonable jury could find for Plaintiff on his Fourth Amendment and state law claims" (id. at 16 (emphasis omitted and standardized capitalization used); see also id. at 16-22 (developing that argument)), (iii) Plaintiff's "Fourth Amendment unlawful traffic stop claim is, at the very least, barred by qualified immunity" (id. at 23 emphasis omitted and standardized capitalization used); see also id. at 23-24 (developing that argument)), and (iv) Plaintiff's "state law claims are, at the very

3

least, barred by public official immunity"[2] (id. at 24; see also id. at 24-25 (developing that argument)).  Plaintiff has responded in opposition to the instant Motion (see Docket Entry 30) and Defendants have replied (see Docket Entry 31).

**DISCUSSION**

**I. Relevant Standards**

"The [C]ourt shall grant summary judgment if [Defendants] show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for [Plaintiff]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering summary judgment, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to [Plaintiff]."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  Put another way, Plaintiff "is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him."  Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal brackets and quotation marks omitted).  If, applying that standard, the

---

2  "North Carolina courts refer to this form of immunity as 'public officer immunity' and 'public official immunity,' interchangeably, though the trend seems to indicate that 'public official immunity' is more common now."  Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *16 n.8 (M.D.N.C. Mar. 30, 2020).

4

Court "find[s] that a reasonable jury could return a verdict for [Plaintiff], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

## II. Analysis

Defendants advanced three main arguments for summary judgment: (i) collateral estoppel bars Plaintiff's claims; (ii) Plaintiff's claims fail on the merits; and (iii) qualified and public official immunity bar Plaintiff's claims. Defendants have established entitlement to summary judgment on the merits as to all claims and collateral estoppel also bars Plaintiff's lone federal claim.

## A. Section 1983 Claim

To maintain a claim for relief under Section 1983, Plaintiff must establish "that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); see also Jones v. Chandrasuwan, 820 F.3d 685, 691 (4th Cir. 2016) ("Section 1983 is not itself a source of substantive rights, but rather provides a method for vindicating federal constitutional and statutory rights.").

5

## 1. Individual Capacity Claim

To begin, the Complaint alleges Defendant LaFave (in his official and individual capacity) conducted an unlawful traffic stop in violation of Plaintiff's Fourth Amendment right which he asserts "protect[s him] from unreasonable and unlawful stop[s,] searches[,] and seizures." (Docket Entry 2 at 4.)

As relevant here, for individual liability, Plaintiff must "show that [Defendants], acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "As a general matter, a [state actor] may incur [Section] 1983 liability only through affirmative misconduct." Randall v. Prince George's County, 302 F.3d 188, 202 (4th Cir. 2002). "[Section] 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)). Accordingly, "it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge, 550 F.2d at 928).

"The Fourth Amendment protects 'against unreasonable searches and seizures' of (among other things) the person." Virginia v. Moore, 553 U.S. 164, 168 (2008) (citing U.S. CONST. amend. IV). "Temporary detention of individuals during the stop of an

6

automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of this provision." Whren v. U.S., 517 U.S. 806, 809-10 (1996) (internal quotation marks omitted). "An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id. at 810 (internal quotation marks omitted).

Consistent with the Fourth Amendment, North Carolina law permits an officer to arrest without a warrant "any person who the officer has probable cause to believe (1) has committed a criminal offense in the officer's presence, or (2) has committed a felony." State v. Hardy, 31 N.C. App. 67, 69 (1976); see also N.C. Gen. Stat. § 15A-401(b)(1) ("An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense . . . in the officer's presence."). Further, North Carolina law states "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any law-enforcement officer or traffic-control officer invested by law with authority to direct, control or regulate traffic, which order or direction related to the control of traffic." N.C. Gen. Stat. § 20-114.1(a).

Case 1:23-cv-00208-LPA   Document 32   Filed 09/16/24   Page 7 of 24

In this case, the Complaint alleges "Defendant[] LaFave and [Defendant] Monahan . . . g[ave Plaintiff] separate directives and instructions" (Docket Entry 2 at 3; see also Docket Entry 26-8 at 10 (setting out Plaintiff's deposition testimony that "the [officer] that [Plaintiff] saw closest to [him] was telling [him] to come forward, and then the [second officer] . . . was telling [Plaintiff] to turn")). "[O]nce [Plaintiff] traveled beyond the [intersection], he could hear [Defendant] LaFave yelling and directing him to stop." (Docket Entry 2 at 3.) According to Defendant LaFave, "[he] gave [Plaintiff] the same directions that [he] gave other vehicles, directing [Plaintiff] to turn left . . . [however, Plaintiff] drove around [Defendant LaFave]." (Docket Entry 26-4 at 4.) Then, "[b]ecause [Defendant LaFave] believed that [Plaintiff] violated a traffic law by failing to follow [his] directions as a traffic control officer, and [Plaintiff] appeared to be heading south . . . toward the accident . . ., [Defendant LaFave] gave verbal commands [to Plaintiff] to stop." (Id.; see also Docket Entry 26-1 at 3:41:25-3:41:45 (recording Defendant LaFave's testimony at the state motion to suppress hearing that "[he] gave the vehicle a command to come forward and they made a turn in a direction that [he] did not command them to do"); Docket Entry 26-5 at 3 (setting forth Defendant Monahan's declaration that, "[b]ased on the vehicle's position and orientation, it appeared to [him] that

8

[Plaintiff] . . . was going to continue south on NC-5 toward the accident"); Docket Entry 30-1 at 7 (memorializing Defendant Monahan's deposition testimony stating that "[Plaintiff] did not follow the pattern [of other cars]").) Taken "in the light most favorable to [Plaintiff]," Henry, 652 F.3d at 531, even if Defendant LaFave and Defendant Monahan had provided Plaintiff with different instructions, Plaintiff does not dispute that he disobeyed Defendant LaFave's traffic instructions (compare Docket Entry 26-8 at 10 (documenting Plaintiff's deposition testimony that he "saw an officer telling [him] to move forward and [he] saw an officer telling [him] to turn"), with id. at 12 (admitting "I turned left")).

"[T]he probable cause standard . . . is a practical, nontechnical conception," Illinois v. Gates, 462 U.S. 213, 231 (1983) (internal quotation marks omitted), satisfied by an officer's observations of a traffic offense, see United States v. Williams, 740 F.3d 308, 312 (4th Cir. 2014). As Plaintiff failed to follow Defendant LaFave's instructions, Defendant LaFave "had probable cause to believe that [a] provision[] of the [North Carolina] traffic code had been violated." Whren, 517 U.S. at 810; see also N.C. Gen. Stat. § 20-114.1(a) ("No person shall willfully fail . . . to comply with any lawful order or direction of any . . . traffic-control officer . . ., which order or direction related to the control of traffic.). Accordingly, upon seeing

9

Plaintiff disobey his traffic order, Defendant LaFave did not violate Plaintiff's Fourth Amendment rights by stopping the vehicle.[3]

In sum, "there is no genuine dispute as to any material fact and [Defendant LaFave] is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), regarding Plaintiff's Fourth Amendment individual-capacity claim and the Court will enter judgment for Defendant LaFave on that claim.

## 2. Official Capacity Claim

Plaintiff's official capacity claim against Defendant LaFave, which constitutes a claim "against the governmental entity employing [him]," Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006), i.e., the Village of Pinehurst, falls short for an additional reason. Specifically, "claims against the officers in their official capacities are claims against the entities for which

_____

3 Notably, Plaintiff has not shown that the record contains any evidence that Defendant LaFave knew of any conflicting instructions by Defendant Monahan that could have vitiated the existence of probable cause. (See Docket Entry 30 at 2-4, 7-9.) In his memorandum in opposition to the instant Motion, Plaintiff states "Defendant LaFave acknowledged [there] was some confusion regarding the directions given to [] Plaintiff" and cites minute 3:52 of the recording of the state motion to suppress hearing. Id. at 3. However, per the recording, Defendant LaFave testified "Yes it was" to a question posed to him by Plaintiff's attorney asking "if it was more like a confusion kind of thing." (Docket Entry 26-1 at 3:52.) That answer fails to establish that Defendant LaFave knew at the time of the incident that Defendant Monahan had provided contradictory or conflicting instructions to Plaintiff; instead it reflects Defendant LaFave's after-the-fact assessment of Plaintiff's decision to turn the wrong way.

the officers were acting. . . . [T]o establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." <u>Giancola v. State of W. Va. Dep't of Pub. Safety</u>, 830 F.2d 547, 550 (4th Cir. 1987). The Complaint alleges a Fourth Amendment violation from the actions of Defendant LaFave (<u>see</u> Docket Entry 2 at 4-5), but does not set out any factual allegations showing that those actions resulted from any official policy or custom of the Village of Pinehurst (or its Police Department) (<u>see</u> <u>id.</u> at 1-8; <u>see also</u> Docket Entry 26-8 at 4-18 (lacking any such evidence)), and, as such, any official capacity claim fails as a matter of law, <u>see</u> <u>Mitchell v. Rountree</u>, No. 1:16cv1352, 2018 WL 3626432, at *4 (M.D.N.C. July 30, 2018) (recommending dismissal of Section 1983 official capacity claims against police officers for the plaintiff's failure to "identify a municipal policy or custom that caused his injury"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 14, 2018).

Under these circumstances, the Court will grant the instant Motion with respect to Plaintiff's Section 1983 official-capacity claim.

### 3. Collateral Estoppel

In the alternative, Defendant LaFave has established entitlement to summary judgment on Plaintiff's Fourth Amendment claim under principles of collateral estoppel.

11

Collateral estoppel "operates to bar subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily determined by a court of competent jurisdiction in the first litigation." In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (internal quotation marks omitted). Moreover, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980).

"In determining the preclusive effect of a state-court judgment, the federal courts, must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995). In North Carolina, collateral estoppel applies when:

> (1) the issues are the same as those involved in the prior action, (2) the issues have been raised and actually litigated in the prior action, (3) the issues were material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action was necessary and essential to the resulting judgment.

Sykes v. Blue Cross & Blue Shield of N.C., 372 N.C. 318, 325 (2019) (internal brackets and ellipsis omitted). "A suppression hearing in an earlier state criminal trial collaterally estops the relitigation of the same issues in a [Section] 1983 action if the elements of collateral estoppel are met." Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993).

12

In this case, the state court held a suppression and probable cause hearing on July 8, 2020. (See Docket Entry 26-1.) At that hearing, Defendants presented testimony and Plaintiff (through counsel) cross examined Defendants. (See id. at 3:37-5:02.) Plaintiff contends that "the issue[ of probable cause] w[as] never 'actually litigated' because the determination in the suppression hearing was based only on the testimony of [] Defendants" (Docket Entry 30 at 7) and "that [testimony] conflicted with [Defendants'] incident reports and . . . depositions" (id.). However, Plaintiff had a full and fair opportunity to present evidence and cross examine Defendants at the hearing. (See Docket Entry 26-1 at 3:37-5:02.) Further, the state court held that Defendant LaFave lawfully stopped Plaintiff's vehicle for failing to follow Defendant LaFave's traffic instructions. (See Docket Entry 26-1 at 4:11-4:12.)

Collateral estoppel principles thus provide an alternative basis for entry of summary judgment against Plaintiff on his claim under the Fourth Amendment.

### B. State Law Claims

The Complaint also asserts state law claims against Defendants for false imprisonment, assault and battery, IIED, and malicious prosecution. (See Docket Entry 2 at 5-7.)[4]

_____

4  The caption of the Complaint purports to bring claims against Defendant LaFave and Defendant Monahan in their individual (continued...)

13

## 1. False Imprisonment

"False imprisonment is the illegal restraint of a person against his will.  A restraint is illegal if it is not lawful or consented to."  <u>Marlowe v. Piner</u>, 119 N.C. App. 125, 129 (1995) (internal citation omitted).  The Complaint alleges false imprisonment against Defendants by contending that, "[a]fter an unlawful stop, [Plaintiff] was not briefly detained, but was ordered to exit his vehicle, searched and placed on the ground — unfree to leave . . . [and later] placed in handcuffs while on the roadside, restricting his movement and mobility."  (Docket Entry 2 at 5.)

The record reflects that, after stopping Plaintiff's vehicle, upon approach, Defendants LaFave and Monahan "noticed a strong odor [of marijuana] coming from the vehicle."  (Docket Entry 26-5 at 4; <u>see also</u> Docket Entry 26-4 at 5 (same).)  Defendants LaFave and

---

4(...continued)
capacities, and "in the alternative, in [their] official capacit[ies]."  (Docket Entry 2 at 1 (italics omitted).)  However, for state law claims, Defendant LaFave and Defendant Monahan, "in their official capacities, are generally immune from suit under the doctrine of governmental immunity.  That immunity is absolute unless the [Village of Pinehurst] has consented to being sued or otherwise waived its right to immunity."  <u>Schlossberg v. Goins</u>, 141 N.C. App. 436, 440 (2000); <u>see also</u> N.C. Gen. Stat. § 160A-485(a).  "[T]he record does not show that the [Village of Pinehurst] has expressly consented to being sued," and thus, Plaintiff's state law claims against Defendant LaFave and Defendant Monahan "may only be maintained to the extent the [Village of Pinehurst] has waived its governmental immunity."  <u>Goins</u>, 141 N.C. at 440.  In this case, the record lacks any evidence that establishes a waiver of governmental immunity.  Any official-capacity state-law claims against Defendant LaFave and Defendant Monahan fail as a matter of law.

14

Monahan then "order[ed] the [vehicle] occupants to exit the vehicle so it could be searched." (Docket Entry 26-4 at 5; see also Docket Entry 26-5 at 4 (setting out Defendant Monahan's declaration that he reported to Defendant LaFave that "[he] saw . . . marijuana in the car"); Docket Entry 26-4 at 5 (setting out Defendant LaFave's declaration as follows: "[Defendant] Monahan told me that he saw more marijuana in the vehicle. At that point, I believed that there was probable cause to search the vehicle [and] I instructed the occupants to exit the vehicle . . . so I could search the [vehicle]."); Docket Entry 26-6 at 2 (setting out Defendant Earl's declaration that he "st[ood] with the three [vehicle] occupants while [Defendant] LaFave searched the vehicle").

As previously established, Defendant LaFave lawfully stopped Plaintiff's vehicle based on "probable cause to believe that [a] provision[] of the [North Carolina] traffic code had been violated," Whren, 517 U.S. at 810. At that point, "a police officer may . . . order the driver [and passengers] of a lawfully stopped car to exit [the] vehicle." Maryland v. Wilson, 519 U.S. 408, 410 (1997); see also Arizona v. Johnson, 555 U.S. 323, 331 ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle . . . ."). Next, in North Carolina, "[a]n officer may arrest without a warrant any person who the officer has probable cause to believe[] has committed a felony[ or certain misdemeanors

15

outside of presence of the officer]." N.C. Gen. Stat.
§ 15A-401(b)(2)(a)-(e). "Probable cause for a warrantless arrest
is defined as facts and circumstances within the officer's
knowledge that are sufficient to warrant a prudent person, or one
of reasonable caution, in believing, in that circumstances shown,
that the suspect has committed, is committing, or is about to
commit an offense." United States v. Coleman, 100 F. App'x 202,
204 (4th Cir. 2004) (internal quotation marks omitted). The Fourth
Circuit "ha[s] repeatedly held that the odor of marijuana alone can
provide probable cause to believe that marijuana is present in a
particular place." United States v. Price, 717 F. App'x 241, 244
(4th Cir. 2018) (internal quotation marks omitted). "Thus, if an
officer smells the odor of marijuana in circumstances where the
officer can localize its source to a person, the officer has
probable cause to believe that the person has committed or is
committing the crime of possession of marijuana." Id. (internal
quotation marks omitted).

In this case, not only did Defendants LaFave and Monahan
detect the odor of marijuana, but, after stopping the vehicle, in
response to Defendant LaFave asking "Where's the weed?" (Docket
Entry 2 at 3), "Plaintiff immediately provided [Defendant LaFave]
a container with small bits of an unknown substance inside of it"
(id.). Further, during the search of the vehicle, Defendant LaFave
recovered "a clear mason jar containing three individually wrapped

16

clear plastic bags of what appeared to be marijuana, a digital scale . . . and a 9mm Taurus PT11 model G2 handgun with a factory magazine and 8 rounds of ammunition." (Docket Entry 26-4 at 6.) "[Plaintiff] was [subsequently] placed under arrest." (Docket Entry 2 at 3.)

Accordingly, the record evidence, taken in a light most favorable to Plaintiff, establishes that Defendants lawfully stopped Plaintiff's vehicle, directed Plaintiff to exit the vehicle, and arrested Plaintiff after the search. Put another way, "[b]ecause probable cause existed justifying [P]laintiff's [detention and] arrest, [P]laintiff cannot maintain any claims against Defendants for . . . false imprisonment." Rowell v. City of Hickory, 5:97cv75, 2008 WL 11429435, at *9 (W.D.N.C. June 20, 2008); see also Wilkerson v. Hester, 114 F. Supp.2d 446, 451 (W.D.N.C. 2000) (noting that "[t]he fact that the [p]laintiff was later acquitted of some of the charges made subsequent to his arrest does not alter the determination of whether probable cause existed at the time thereof"). As a result, the Court will grant the instant Motion with respect to Plaintiff's false imprisonment claim.

## 2. Assault and Battery

Next, the Complaint asserts assault and battery claim(s) against Defendant Monahan and Defendant Earl, on the grounds that "Defendant[] Monahan's behavior of motioning [Plaintiff] to exit

the vehicle with [Defendant Monahan's] service weapon placed [Plaintiff] in fear of imminent harm" and "Defendant Earl's behavior of unlawfully handcuffing and making [Plaintiff] sit on the cold ground for an extended period of time placed [Plaintiff] in fear of imminent harm." (Docket Entry 2 at 6.)

"[A] civil action for damages for assault and battery is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Myrick v. Cooley, 91 N.C. App. 209, 215 (1988). "Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties." Id. "[Officers] may not act maliciously in the wanton abuse of [their] authority or use unnecessary and excessive force." Todd v. Creech, 23 N.C. App. 537, 539 (1974).

Here, the record evidence shows "that [Defendant Monahan] did not physically participate in the arrest but merely [directed Plaintiff to exit the vehicle while holding his gun towards the ground]," Myrick, 91 N.C. App. at 215. (See Docket Entry 26-5 at 5 (setting out Defendant Monahan's declaration that "[he] drew [his] weapon briefly and pointed it at the ground").) Then, after Defendant LaFave recovered apparent narcotics and a firearm from the vehicle (see Docket Entry 26-4 at 6), Defendant Earl

18

"handcuff[ed Plaintiff] and ma[de] him to sit on the [side of the road]" (Docket Entry 2 at 6; see also Docket Entry 26-6 at 3 (setting out Defendant Earl's declaration that "[he] then placed [Plaintiff] in handcuffs . . . and [Defendant] Monahan then instructed [Plaintiff] to sit on the ground")). "[T]his evidence is insufficient to support any claims against [Defendant Monahan and Defendant Earl] of excessive use of force," Myrick, 91 N.C. App. at 215, as they did "not act maliciously in the wanton abuse of [their] authority or use unnecessary and excessive force," Todd, 23 N.C. App. at 539.

The Court therefore will grant the instant Motion with respect to Plaintiff's assault and battery claim(s).

### 3. IIED

The Complaint goes on to allege a claim of IIED against all Defendants on the grounds that "[Defendants] engaged in extreme and outrageous conduct by using a service weapon to give directives to [Plaintiff] after [the traffic stop]" and "[Defendants] intended to cause severe distress when they told [Plaintiff] he would receive a citation, yet, ultimately placed him under arrest." (Docket Entry 2 at 6.) According to the Complaint, due to Defendants' actions, Plaintiff "has suffered from bouts of depression, hopelessness, insomnia and anxiety." (Id.)

To prevail on a claim for IIED, Plaintiff must show "(1) extreme and outrageous conduct, (2) which is intended to cause

19

and does cause[,] (3) severe emotional distress to another." Dickens v. Puryear, 302 N.C. 437, 449 (1981). Further, "[t]he tort may also exist where [Defendants'] actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 488 (1986). "Stated differently, a defendant is liable for IIED when, 'he desires to inflict serious severe emotional distress or knows that such distress is certain, or substantially certain, to result from his conduct or where he acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow and the mental distress does in fact follow.'" Clark v. Clark, 280 N.C. App. 403, 415-16 (2021) (quoting Dickens, 302 N.C. at 449). "The initial determination of whether conduct is extreme or outrageous is a question of law for the court." Norton v. Scotland Mem'l Hosp., Inc., 250 N.C. App. 392, 398 (2016) (internal brackets omitted).

"Extreme and outrageous conduct is defined as conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. at 397 (quoting Smith-Price v. Charter Behav. Health Sys., 164 N.C. App. 349, 354 (2004)). North Carolina courts "have set a high threshold for finding that conducts meets th[is] standard." Id. at 398 (internal quotation marks omitted). "[O]n the issue of what

20

constitutes extreme and outrageous conduct," Hensley v. Suttles, 167 F. Supp. 3d 753, at 767-68 (W.D.N.C. 2016), in other cases, the facts recounted "exemplify the atrocious and utterly intolerable acts necessary to satisfy the [standard]," id. at 768. See, e.g., Dickens, 302 N.C. at 439, 455 (finding extreme and outrageous behavior where the defendants, inter alia, "handcuffed [the] plaintiff," "beat him into semi-consciousness," "cut[ the] plaintiff's hair [with a knife while] threaten[ing the] plaintiff with castration," and, "within [the] plaintiff's hearing, discussed and took votes on whether [the] plaintiff should be killed or castrated"); Watson v. Dixon, 130 N.C. App. 47, 53 (1998) (finding extreme and outrageous behavior where the defendant frightened and humiliated the plaintiff with cruel practical jokes, made obscene comments and indecent physical suggestions to her, and threatened her personal safety).

"In other words, conduct is deemed outrageous when a defendant intends, knows, or deliberately disregards the high degree of probability that his extreme threats and actions will strike fear and anguish into the heart of the victim." Hensley, 167 F. Supp. at 768 (internal quotation marks omitted). The record in this case, taken in a light most favorable to Plaintiff, fails as a matter of law to establish such extreme and outrageous conduct. Plaintiff has provided no evidence that Defendants sought to threaten Plaintiff's safety or subject him to harassment or harm.

21

(See Docket Entry 2 at 1-8; Docket Entry 30-1 at 5-7; Docket Entry 30-2 at 5.) Defendants did not engage in any behavior "in a particularly traumatizing manner with the intent to inflict severe emotional distress." Hensley, 167 F. Supp. at 768.

Based on those considerations, Plaintiff's IIED claim fails as a matter of law.

### 4. Malicious Prosecution

Finally, the Complaint alleges malicious prosecution against Defendants because they "knowingly initiated a false felony charge against [Plaintiff]." (Docket Entry 2 at 7.) In that regard, the Complaint alleges that Defendants "provided information" to the state prosecutor "maliciously because they knew or should have known that [Plaintiff] was not responsible for the marijuana, gun or other items [found] in the vehicle" and that "Defendants . . . did not have probable cause to believe a crime was committed or that [Plaintiff] committed a crime." (Id.)

Under North Carolina law, Plaintiff must establish, "(1) [D]efendant[s] initiated the earlier proceeding; (2) malice on the part of [D]efendant[s] in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of [P]laintiff." Nguyen v. Burgerbusters, Inc., 182 N.C. App. 447, 450 (2007). "Malice can be inferred from the want of probable cause alone." Moore v. Evans, 124 N.C. App. 35, 42 (1996) (internal brackets

22

omitted). "[I]t is undisputed that [the actions of Defendants] initiated the criminal prosecution against [Plaintiff] and that the prosecution ended with a dismissal of the charges against him." Id. Accordingly, "the only issue as to [Plaintiff's] claim for malicious prosecution is whether [Defendants] had probable cause to initial the criminal prosecution against him." Id.

As previously established, Defendant LaFave possessed probable cause to stop Plaintiff's vehicle due to a traffic instruction violation. Defendant LaFave and Defendant Monahan further possessed probable cause to continue the stop and to search the vehicle due to, inter alia, Plaintiff handing Defendant LaFave a medicine jar containing an unknown substance in response to a question asking for the location of marijuana after they detected the smell of marijuana. Additionally, probable cause existed to arrest and charge Plaintiff due to the suspected marijuana, scale, and firearm found in the vehicle Plaintiff drove. See United States v. Singleton, 441 F.3d 290, 296 (4th Cir. 2006) ("A person has constructive possession over contraband when he has . . . control over . . . [the] vehicle in which it [i]s concealed."); United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999) (same); see also United States v. Myers, 986 F.3d 453, 454 (4th Cir. 2021) ("When a law enforcement officer finds illegal drugs in an automobile that the officer has legally stopped and searched . . ., it is entirely reasonable for the officer

23

to . . . arrest [the vehicle occupants] on probable cause that they are committing a crime." (internal quotation marks omitted)). Simply put, taken in the light most favorable to Plaintiff, his claim for malicious prosecution cannot survive summary judgment.

## CONCLUSION

Even when viewed in Plaintiff's favor, the record establishes that all claims against Defendants fail as a matter of law.

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 26) be granted and that summary judgment be entered in favor of Defendants on all of Plaintiff's claims against them.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 16, 2024

24